1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RAYMOND CHARLES MORRIS,                    No.  2:16-cv-0771 JAM AC P

12                      Petitioner,

13          V.                                   FINDINGS AND RECOMMENDATIONS

14   J. MACDONALD,

15                      Respondent.

16

17          I.      Introduction

18          Petitioner is a state prisoner proceeding pro se and in forma pauperis with this habeas

19   corpus action filed pursuant to 28 U.S.C. § 2254.  The case proceeds on the original petition filed

20   March 23, 2016,[1] which challenges the validity of petitioner's 2004 guilty plea.  See ECF No. 1.

21   Respondent moves to dismiss the petition on the ground that it was filed after expiration of the

22   one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act

23   (AEDPA), 28 U.S.C. § 2244(d).  ECF No. 12.  Petitioner opposes the motion on the ground that

24   _____

25   [1]  Unless otherwise noted, petitioner's filing dates referenced herein are based on the prison
     mailbox rule, pursuant to which a document is deemed served or filed on the date a prisoner signs
     the document (or signs the proof of service, if later) and gives it to prison officials for mailing.

26   See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry,
     614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings

27   by prisoners).  See also Rule 3(d), Federal Rules Governing Section 2254 Cases ("[a] paper filed
     by an inmate confined in an institution is timely if deposited in the institution's internal mailing

28   system on or before the last day for filing").

                                                    1

his actual innocence on two of the five counts to which he pled guilty overrides the statute of limitations.  ECF No. 14.  Respondent's reply addresses petitioner's actual innocence claim.  ECF No. 21.

For the reasons that follow, the undersigned recommends that respondent's motion to dismiss be granted, and this action be dismissed.

II.      Statute Of Limitations

AEDPA's one-year statute of limitations provides in pertinent part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . .

28 U.S.C. § 2244(d)(1)(A).

The limitations period is statutorily tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ."  28 U.S.C. § 2244(d)(2).  A state petition is "properly filed," and thus qualifies for statutory tolling, if "its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  Artuz v. Bennett, 531 U.S. 4, 8 (2000).  "The period between a California lower court's denial of review and the filing of an original petition in a higher court is tolled – because it is part of a single round of habeas relief – so long as the filing is timely under California law."  Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010); see also Carey v. Saffold, 536 U.S. 214, 216-17 (2002) (within California's state collateral review system, a properly filed petition is considered "pending" under Section 2244(d)(2) during its pendency in the reviewing court as well as during the interval between a lower state court's decision and the filing of a petition in a higher court, provided the latter is filed within a "reasonable time").

The limitations period may be equitably tolled if a petitioner establishes shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  "The high threshold of extraordinary

2

circumstances is necessary lest the exceptions swallow the rule." <u>Lakey v. Hickman</u>, 633 F.3d

782 (9th Cir. 2011) (citations and internal quotation marks omitted).

   III.  <u>Timeliness of the Petition</u>

    A.  <u>Factual and Procedural Background</u>

  • On August 6, 2004, petitioner pled guilty to two counts of forcible lewd acts upon a

child under the age of 14 years, and three counts of forcible rape, and was sentenced to a

determinate state prison term of 40 years. <u>See</u> Lodged Document (Lodg. Doc.) 1.[2]

  • Petitioner did not appeal his judgment of conviction or sentence. However, petitioner

later filed four state petitions for collateral relief.

  • First State Petition: On May 8, 2015, petitioner filed a petition for writ of habeas

corpus in the Shasta County Superior Court. Lodg. Doc. 2. On June 10, 2015, the petition was

denied as untimely and because none of petitioner's claims demonstrated a miscarriage of justice.

Lodg. Doc. 3.

  • Second State Petition: On August 13, 2015, petitioner filed a petition for writ of habeas

corpus in the California Court of Appeal, Third Appellate District. Lodg. Doc. 4. On August 27,

2015, the petition was summarily denied. Lodg. Doc. 5.

  • Third State Petition: On October 16, 2015, petitioner filed a petition for writ of habeas

corpus in the California Supreme Court. Lodg. Doc. 6. On January 27, 2016, the petition was

summarily denied with citation to <u>In re Robbins</u>, 18 Cal. 4th 770, 780 (1998). Lodg. Doc. 7.

  • Fourth State Petition: On March 21, 2016, petitioner filed a second petition for writ of

habeas corpus in the California Supreme Court. Lodg Doc. 8. On May 18, 2016, the petition was

summarily denied with citation to <u>In re Robbins</u>, 18 Cal. 4th 770, 780 (1998), and <u>In re Clark</u>, 5

Cal. 4th 750, 767-69 (1993). Lodg. Doc. 9.

  • Instant Federal Petition: On March 23, 2016, petitioner filed the instant federal habeas

petition pursuant to 28 U.S.C. § 2254. ECF No. 1.

---

[2] Lodged Document No. 1 includes the following matters, each dated August 6, 2004 and filed in the Shasta County Superior Court: Abstract of Judgment; Judgment and Sentencing; and completed Felony Change of Plea form, including Waiver of Rights, Advisement of Consequences, and Findings and Order.

B.      Analysis

Petitioner did not pursue an appeal after he pled guilty and was sentenced on August 6, 2004.  Under state law, petitioner's judgment of conviction and sentence became final sixty days later, on October 5, 2004, upon expiration of the time for filing a direct appeal.  See Rule 8.308(a), California Rules of Court; Mendoza v. Carey, 449 F.3d 1065, 1067 (9th Cir. 2006). Thereafter, petitioner had one year to file his federal petition.  This one-year limitations period, see 28 U.S.C. § 2244(d)(1)(A), commenced running the following day, on October 6, 2004, see Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (commencement of limitations period excludes last day of period for seeking direct review, by application of Fed. R. Civ. P. 6(a)).

Thus, absent tolling, the last day on which petitioner could timely file his federal petition was October 5, 2005.  However, petitioner filed his federal petition more than ten years later, on March 23, 2016.

Once the federal limitations period has expired, it may not be reinitiated by the filing of a state habeas petition, even if the latter was timely under state law.  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("we hold that section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed") (citation and fn. omitted), cert. denied, 540 U.S. 924 (2003).

Petitioner filed his first state habeas petition on May 8, 2015, more than nine years after expiration of AEDPA's statute of limitations.  Neither that petition, nor any of petitioner's subsequent state petitions, revived the federal statute of limitations.  Therefore, petitioner is not entitled to statutory tolling.

Moreover, petitioner asserts no basis other than actual innocence upon which to find equitable tolling.  His actual innocence claim is addressed below.

Accordingly, this court finds that the instant federal petition was untimely because it was filed more than after expiration of AEDPA's one-year statute of limitations.  Absent a sufficient showing of actual innocence, this action should be dismissed as untimely.

////

////

4

IV.     Actual Innocence

In his opposition, petitioner expands upon one of the claims in his petition to assert that he is actually innocent of two counts to which he pled guilty, and that such innocence supports an equitable exception to AEDPA's limitations period and thus requires consideration of the claim on the merits under McQuiggin v. Perkins, 133 S. Ct. 1924 (2013).

A.      Legal Standards

"[W]here an otherwise time-barred habeas petitioner demonstrates that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner may pass through the Schlup [v. Delo, 513 U.S. 298 (1995)] gateway and have his constitutional claims heard on the merits."  Lee v. Lampert, 653 F.3d at 937; accord, McQuiggin, 133 S.Ct. at 1928.  In order to obtain relief from the statute of limitations, a petitioner claiming actual innocence must establish a miscarriage of justice under the Schlup standard by demonstrating "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  Lee, 653 at 938.  Actual innocence in the miscarriage of justice context "means factual innocence, not mere legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623-24 (1998); Sawyer v. Whitley, 505 U.S. 333, 339 (1992) (citing Smith v. Murray, 477 U.S. 527 (1986)); Jaramillo v. Stewart, 340 F.3d 877, 882-83 (9th Cir. 2003) (accord).

To make a credible claim of actual innocence, the petitioner must produce "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  Schlup, 513 U.S. at 324.  The habeas court then considers all the evidence: old and new, incriminating and exculpatory, admissible at trial or not.  House v. Bell, 547 U.S. 518, 538 (2006).  On this complete record, the court makes a "'probabilistic determination about what reasonable, properly instructed jurors would do.'"  Id. (quoting Schlup, 513 U.S. at 330).

////

////

////

5

1

B.      Factual Background[3]

2        Petitioner was charged with 22 counts of sexual assault against two victims, Victim 1

3  ("Joseph M."), petitioner's step-son, and Victim 2 ("Joan M."), petitioner's natural daughter and

4  Joseph's older half-sister.[4]   Eleven of the counts were also charged against petitioner's wife.  The

5  counts against petitioner exposed him to a maximum prison term of "194 years and 4 months to

6  life."  Lodg. Doc. 3 at 1 (June 10, 2015 observation by the Shasta County Superior Court in

7  denying petitioner's May 8, 2015 habeas petition).

8        The investigation leading to these charges, the report of which was adopted as the

9  stipulated factual basis for petitioner's plea,[5] determined that petitioner and his wife sexually

10  abused several of their 10 or 11 children, then ranging in age from 11 months to 21 years.  The

11  family lived in a trailer in which the children were often locked, and the children were home

12  schooled "just enough to keep the State out of their lives."  ECF No. 21-3 at 5.

13        Joseph was 16 years old when he spoke to law enforcement.  He stated that petitioner

14  began sexually assaulting him when he was 12 or 13.  Joseph was forced to engage in sex acts

15  with his mother, which petitioner video-taped.  Petitioner hid the tapes in a locked safe.  A year

16  previously, petitioner forcibly sodomized Joseph by choking him to the point of unconsciousness.

17  Petitioner told Joseph and the other children that he would kill anyone who talked to outsiders

18  about these matters, and that he would use the shovel in the back of his truck to bury them.

19  Petitioner and his wife were at all times armed with loaded pistols.

20        Joan was 23 years old when she reported to law enforcement.  Joan stated that she was

21

22  [3]  This information is based on the following documents submitted by respondent:  Consolidated First Amended Information, filed January 15, 2003 (ECF No. 21-1 at 1-11 (Rp. Ex. A));

23  Transcript of August 6, 2004 Change of Plea and Sentencing Hearing (ECF No. 21-2 at 1-16 (Rp. Ex. B); and Redding Police Department Investigative Report No. 02-15704, based on March 20,

24  2002 interviews of victims (ECF No. 21-3 at 1-7 (Rp. Ex. C)).  During petitioner's change of plea, the parties stipulated that the Redding Police Department Report Number 02-15704

25  contained the factual basis for petitioner's plea.  See ECF No. 21-2 at 9 (Rp. Ex. B at 8).

26  [4]  A third identified victim, Victim 3, petitioner's sister, reported to investigators that petitioner engaged in oral sex with her beginning when she was 7 or 8 years old.  See ECF No. 21-3 at 4

27  (Rp. Ex. C at 3.)  Victim 3 does not appear in the charging document.

[5]  ECF No. 21-2 at 9 (Transcript of August 6, 2004 Change of Plea and Sentencing Hearing); see

28  also ECF No. 21-3 at 1-7 (Redding Police Department Investigative Report No. 02-15704).

6

first sexually assaulted by her grandfather (petitioner's father) when she was 4 years old. After a period of time in protective services, she was released to the custody of her father. Petitioner asked Joan to show him where his father touched her, then fondled her in those places and performed oral sex on her. Petitioner continued to sexual assault Joan, including intercourse, "numerous" times until she was 17 and moved to her grandmother's. Petitioner's sexual assaults diminished in frequency but nonetheless continued until Joan was 19.

Petitioner pled guilty to 5 of the 22 charges against him, specifically Counts 2, 5, 6, 18 and 21,[6] and agreed to a stipulated sentence of 40 years. ECF No. 21-2 at 7, 10-3 (Rp. Ex. B). When petitioner entered his plea, his counsel stated, without objection by petitioner, that the birthdates of Joseph and Joan identified in the First Amended Information were correct. Id. at 13.

C.     Petitioner's Contentions and Supporting Evidence

Petitioner contends that he is actually innocent of Counts 2 and 6. These counts charged petitioner with criminal conduct against Joseph in February and March 2002, in violation of Penal Code § 288(b)(1) (forcible lewd acts upon a child under the age of 14 years). Petitioner contends that he is actually innocent of these charges because Joseph was 16 years old in 2002, and not under the age of 14. The "new" evidence offered by petitioner, which was also submitted in support of his March 25, 2016 petition in the California Supreme Court, is a copy of Joseph's birth certificate confirming that his date of birth was October 1, 1985. See Lodg. Doc. 8, Pr. Ex. C; see also Opposition herein, ECF No. 14 at 3.

Petitioner contends that his actual innocence on Counts 2 and 6 implicates a fundamental miscarriage of justice entitling him to pass through the Schlup gateway and obtain this court's

---

[6] These counts set forth the following charges, see ECF No. 21-1 at 3-4, 8-9 (Rp. Ex. A):
  Count 2:  Forcible lewd acts upon a child (Joseph M.) in violation of Cal. Pen. Code § 288(b)(1), on or about March 1, 2002.
  Count 5:  Forcible rape (Joseph M.) in violation of Cal. Pen. Code § 261(a)(2), on or about February 20, 2002.
  Count 6:  Forcible lewd acts upon a child (Joseph M.) in violation of Cal. Pen. Code § 288(b)(1), on or about February 20, 2002.
  Count 18:  Forcible rape (Joan M.) in violation of Cal. Pen. Code § 261(a)(2), between the dates of September 28, 1992 and September 27, 1994.
  Count 21:  Forcible rape (Joan M.) in violation of Cal. Pen. Code § 261(a)(2), between the dates of September 28, 1994 and September 27, 1996.

7

1   review of his guilty plea on those counts.  Schlup, 513 U.S. at 314-15.

2                   D.      Analysis

3           Petitioner correctly identifies a discrepancy between the facts and the statutory provision

4   at issue in Counts 2 and 6.  The discrepancy is inherent in the charges, which allege that in

5   February and March 2002 petitioner sexually assaulted "JOSEPH M (DOB. 10-1-85), a child

6   under the age of fourteen years."  See ECF No. 21-1 at 3, 4 (Rp. Ex. A).  As respondent notes, it

7   "is obvious from the face of the charging document (without need for a birth certificate), one born

8   in 1985 would have, at minimum, attained one's sixteenth birthday" in 2002.  Reply, ECF No. 21

9   at 3.  The court will assume for purposes of analysis that this inconsistency creates a defect in

10  petitioner's convictions on Counts 2 and 6.  However, for the several reasons explained below,

11  neither petitioner's identification of this defect nor his submission of Joseph's birth certificate

12  establishes "actual innocence" within the meaning of Schlup and progeny.

13          First, because Joseph's birth certificate confirms the birth date that was presented to the

14  trial court, it does not constitute "*new* reliable evidence . . . that was not presented at trial."

15  Schlup, 513 U.S. at 324 (emphasis added).  Joseph's date of birth was accurately noted in the

16  Consolidated First Amended Information.  ECF No. 21-1 at 3, 4 (Rp. Ex. A).  Moreover, the trial

17  court correctly identified Joseph's date of birth when petitioner pled guilty.  ECF No. 21-2 at 10

18  (Rp. Ex. B at 9).  It is reasonable to assume that petitioner was fully aware of his step-son's age

19  and the mathematical error in Counts 2 and 6 when he pled guilty.  Accordingly, plaintiff's

20  evidence does nothing to change the evidentiary context relevant to evaluation of his plea.

21  Without "new evidence," petitioner cannot satisfy the Schlup standard.

22          Second, the evidence of Joseph's age is not evidence of *actual* innocence.  The

23  mischarging of Counts 2 and 6 as crimes against a child younger than 14 could support, at most, a

24  claim of technical, legal innocence as to those counts.  A showing of legal innocence is

25  insufficient, however.  See Smith v. Murray, 477 U.S. 527, 537 (1986) ("the miscarriage of

26  justice exception is concerned with actual as compared to legal innocence"); Bousley, 523 U.S. at

27  623-24 (actual innocence "means factual innocence, not mere legal insufficiency.").  Petitioner

28  could have been charged with other crimes, including sexual assault on a sixteen year old, on the

8

1    basis of the conduct underlying Counts 2 and 6.  See Cal. Penal Code § 261.5; see also id., § 261.

2    Petitioner has presented no evidence, and does not contend, that he *did not commit* the charged

3    acts of sexual assault against Joseph in February and March 2002.  This failure of proof dooms

4    his claim of actual innocence.

5           Third, Joseph's age at the time of the assaults is material to Counts 2 and 6 only.

6    Petitioner also pled guilty to Counts 5 (rape of Joseph), 18 and 21 (both involving the rape of

7    Joan).  Seventeen additional counts were dismissed in exchange for the guilty plea.  "In cases

8    where the Government has forgone more serious charges in the course of plea bargaining,

9    petitioner's showing of actual innocence must also extend to those charges."  Bousley, 523 U.S.

10    at 624.  This rule follows from the principle that the actual innocence exception is meant to

11    prevent miscarriages of justice, in the rare case where an entirely innocent person may have been

12    incarcerated.  See McQuiggin, 133 S.Ct. at 1931, Schlup, 513 U.S. at 324-25.  Because

13    petitioner's showing does not extend to all charges, it fails to satisfy the standard for actual

14    innocence.

15           Fourth, petitioner pled guilty, and stipulated to the information contained in the Redding

16    Police Department Investigative Report as the factual basis for his plea.  See ECF No. 21-2 at 9

17    (Rp. Ex. B at 8).  The actual innocence exception is not available to those "whose guilt is

18    conceded or plain."  Schlup, 513 U.S. 321 (quoting Kuhlman v. Wilson, 477 U.S. 436, 452

19    (1986)).

20           Finally, the facts contained in the Investigative Report provide persuasive support for

21    petitioner's guilt on all 22 charges.  Such extensive evidence of petitioner's criminal conduct and

22    his concessions thereto, both express and implied, extinguish any possibility that a reasonable

23    juror would have failed to convict petitioner for sex crimes based on the conduct underlying

24    Counts 2 and 6, as well as the additional charges against him.  For this reason also, petitioner fails

25    to satisfy Schlup.

26           Each of these reasons independently justifies rejection of petitioner's actual innocence

27    claim.  There has been no miscarriage of justice here, and there is accordingly no basis for

28    excusing the untimeliness of the petition.

IV.   Recommendation

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.  Respondent's motion to dismiss, ECF No. 12, be granted; and

2.  This action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

If petitioner files objections, he may also address whether a certificate of appealability should issue and, if so, why and as to which issues.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

DATED: December 12, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE